# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALVIN WARE<br>    LA. DOC #89604<br>VS. | CIVIL ACTION NO. 6:09-1842<br><br>SECTION P<br><br>JUDGE HAIK |
| WARDEN LYNN COOPER | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 by *pro se* petitioner Calvin Ware. Petitioner is incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana. Petitioner attacks his 2004 conviction for attempted forcible rape, entered in the Thirteenth Judicial District Court for Evangeline Parish, for which he is serving a twenty-four year sentence.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

The procedural history of this case has been set forth in the prior Report and Recommendation issued by the undersigned in this case. [rec. doc. 13]. Accordingly, the undersigned will not restate the entire procedural history here, but instead will summarize only those portions which are relevant to the instant determination.

The State charged petitioner by grand jury indictment with aggravated rape in violation of La. R.S. 14:42. After trial by jury, on September 15, 2004, petitioner was found guilty of attempted forcible rape, a lesser included offense. Petitioner was originally sentenced to eighteen years imprisonment. However, on October 12, 2005, after adjudicating petitioner a second offender for purposes of R.S. 15:529.1(A)(1)(a), the trial court sentenced him to twenty-four years imprisonment.

Petitioner directly appealed to the Louisiana Third Circuit Court of Appeals, arguing that the evidence was insufficient to support his conviction. On April 12, 2006, the Third Circuit reversed petitioner's conviction and sentence on direct appeal, concluding that "a rational trier of fact could not have found the Defendant guilty beyond a reasonable doubt." *State v. Ware*, 05-1451, p. 5 (La. App. 3rd Cir.4/12/06), 929 So.2d 240, 244. The State's request for rehearing was denied on June 7, 2006. *State of Louisiana v. Calvin Ware*, 05-1451 (La. App. 3 Cir. 4/12/2006), *reh. denied*, 6/7/2006.

The State applied for writs, which were granted by the Louisiana Supreme Court on March 9, 2007. *State of Louisiana v. Calvin Ware*, 2006-1703 (La. 3/9/2007), 949 So.2d 429. On June 29, 2007, the Louisiana Supreme Court reversed the decision of the Court of Appeal, finding that "the Court of Appeal erred by substituting its appreciation of the evidence for that of the fact finder and thereby failed to accord due deference to the rational credibility choices made by the jury." *State of Louisiana v. Calvin Ware*, 2006-1703 (La. 6/29/2007), 959 So.2d 459, 460. Accordingly, petitioner's conviction and

sentence were reinstated and the case was remanded for the purpose of execution of petitioner's sentence. *Id.* at 464. Petitioner did not seek further direct review in the United States Supreme Court.

After filing for State post-conviction relief, petitioner filed the instant federal *habeas corpus* petition on October 21, 2009. In his petition, petitioner asserted three claims for relief: (1) Ineffective Assistance of Counsel because defense counsel did not request a jury instruction on the defense of intoxication; (2) Sufficiency of the Evidence because the evidence was insufficient to conclude that the petitioner had the specific intent to commit the alleged offense; and (3) Petitioner was denied his right to due process at the evidentiary hearing held on his application for post-conviction relief when the court refused to continue the hearing so petitioner could secure the presence of the victim of the crime and other lay fact witnesses.

By Report and Recommendation dated November 18, 2010, the undersigned recommended that petitioner's ineffective assistance of counsel claim and claim that petitioner's Constitutional rights were denied at the evidentiary hearing held on his application for post-conviction relief (claims 1 and 3 herein) be denied and dismissed with prejudice because these claims were procedurally defaulted. [rec. doc. 13]. Petitioner filed no objections to the Report and Recommendation. By Partial Judgment dated May 12, 2011, these claims were denied and dismissed with prejudice. [rec. doc. 28].

The State has filed an Answer and Memorandum in Opposition to the sole claim remaining for this court's review, that is, that there was insufficient evidence to support petitioner's conviction (claim 2 herein). [rec. doc. 22]. The State has also submitted the State court record for this court's review. This Report and Recommendation follows.

## LAW AND ANALYSIS

*Standard of Review*

This *habeas* petition was filed on April 12, 2007; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[2] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

---

[1] Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams,* 120 S.Ct. at 1516 and 28 U.S.C. § 2254(d) (West 1994).

[2] Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere

5

disagreement with the state court. *Montoya,* 226 F.3d at 404; *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such factual determinations to

be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.*; 28 U.S.C. § 2254(e)(1). Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000). *See also Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) ( "Unless rebutted by clear and convincing evidence, a state court's determination of a factual issue shall be presumed to be correct. The presumption [that a state *habeas* court's factual findings are correct] is particularly strong when the state *habeas* court and the trial court are one and the same.").

Petitioner's sufficiency of the evidence claim was adjudicated on the merits in the Louisiana state courts on direct appeal. Accordingly, review of this claim is governed by the above standard.

**I. Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his conviction for attempted forcible rape. More specifically, petitioner contends that there was insufficient evidence that petitioner had the specific intent to commit forcible rape. He additionally argues that the victim gave "two different stories" to the police, that her testimony was unsupported, and that physical evidence of rape was lacking.

In rejecting this claim on direct appeal, the Louisiana Supreme Court summarized the testimony presented at trial and found that the evidence was sufficient to support

7

petitioner's conviction for attempted forcible rape. Because the Louisiana Supreme Court's decision was not contrary to, or an unreasonable application of, federal law, nor were the Louisiana Supreme Court's factual determinations unreasonable in light of the State court record, under the applicable standard of review, the Louisiana Supreme Court's decision may not be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783. Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791-92; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This court applies the *Jackson* standard "giving great weight to the state court's determination." *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987). Both direct and circumstantial evidence can contribute to the sufficiency of

the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*).

Contrary to petitioner's position, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992); *See also Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998) *citing Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). Accordingly, "whether judges doubt the credibility of a witness . . . is beside the point . . . ." *Greenwood*, 974 F.2d at 1458. The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

Under Louisiana law, forcible rape is defined as vaginal sexual intercourse, which is deemed to be without the lawful consent of the victim because the victim is prevented

from resisting the act by force or threats of physical violence, under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1(1).

A person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object . . . ." La. R.S. 14:27(A).

Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. . . . ." La. R.S. 14:10(1); *State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2d Cir. 2003) *citing State v. Lindsey*, 543 So.2d 886 (La. 1989). Since specific intent is a state of mind, it need not be proved directly but may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So.2d 1126, 1127 (La. 1982); *State v. Broaden*, 780 So.2d 349, 362 (La. 2001).

Direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue; circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Austin*, 399 So.2d 158, 160 (La. 1981); *State v. Lilly*, 468 So.2d 1154, 1158 (La. 1985).

As found by the Louisiana Supreme Court, the evidence presented in this case is sufficient to support any rational juror's finding that petitioner committed attempted

forcible rape. Accordingly, petitioner's conviction must stand.

The evidence was extensively summarized by the Louisiana Supreme Court as follows:

> On the evening of November 22, 2003, the victim brought her four small children to the home of her former in-laws, Calvin and Beth Ware. The victim testified that she had a good relationship with her former father-in-law, defendant, despite divorcing his son in April, 2003. The victim explained that Mrs. Ware often babysat her children while she was at work. On this particular occasion, the victim brought her children to the defendant's home to spend the night. The victim also intended to spend the night at the house and to leave for work the next morning.
>
> Later that evening, defendant agreed to drive his daughter, her boyfriend and his daughter's young son to a Boy Scout camp maintained by the boyfriend near Bayou Chicot, north of Ville Platte, Louisiana. The victim and her nine-year-old son, Cody, accompanied the group on the drive, leaving the other three children in the care of Mrs. Ware. The victim explained that she chose to ride along with the group because she had never been to the property in Chicot and was curious to see it before she permitted her sons to spend the weekend there with their aunt. After dropping off the group at the camp in Chicot, defendant remained in the car with the victim and Cody. He then expressed a desire to drive around the back roads of the area to look for deer and other animals.
>
> Shortly thereafter, the victim realized that defendant was drinking from a bottle of vodka he had underneath his seat. At one point in the excursion, defendant stopped at a service station where the victim bought him another pint of vodka. Eventually, as defendant cruised the back roads, the victim fell asleep in the front seat of the car while Cody slept in the back. The victim awoke when she felt the car roll to a stop and heard the defendant open the passenger side door. The victim testified at trial that when she tried to get out of the vehicle, defendant shoved her back onto the front seat. She then tried to get out of the car through the driver's side door but the defendant grabbed her leg and began to pull off her jeans as she was "fighting and trying to get away." Defendant managed to pull the victim's jeans off of one leg and to pull down her underwear as she struggled and screamed. According to the victim, he then penetrated her while the young

Cody slept in the back seat.

During the struggle, the victim inadvertently hit a pre-programmed speed dial number on her cellular phone, which called the Oakdale Police Department, her former husband's employer. Officer Charlene Hudgens, the dispatcher on duty that night, listened on that open line and overheard what seemed to her background conversation between two persons engaged in some sort of "struggle." The officer based her opinion on "comments I could hear the female saying towards the male subject directing him to stop doing certain things." The woman was "sobbing and crying" and the male voice was low and stern. It seem to the officer that "there was some sort of not only a physical assault, but possibly a ... sexual assault going on." Officer Hudgens alerted her supervisor and logged in the call. Using the caller identification system at the police department, Officer Hudgens determined the telephone number used by the phone placing the call and she called the number back.

In the meantime, the victim had managed to pull away from the defendant just after he turned from her momentarily as he experienced problems with ejaculating and she escaped from the car. Shortly after the assault, defendant began "fidgeting" underneath the hood of the vehicle and told the victim that the car had broken down. He instructed her to call someone on her cellular phone to come pick them up. Before the victim was able to dial anyone, she received Officer Hudgens's call on her phone. By that time, Officer Hudgens recognized the victim's voice, familiar to her because the victim had been married to a fellow officer at the Oakdale Police Department. Hudgens's advised the victim, who was unable to furnish an exact location because she was unfamiliar with the area, to keep her phone on until help arrived. The victim woke up her son and made her way to a nearby house at the end of the road where defendant had parked and she called the police.

Evangeline Parish Deputy Sheriff Michael Fontenot arrived first on the scene, and he found defendant asleep at the wheel of his car, the driver's side door open and the hood of the vehicle raised. When Deputy Fontenot tugged on defendant to remove him from the car, he woke up and stated, "She got what she deserved." It appeared to the deputy that defendant was intoxicated and his breath smelled of alcohol. Deputy Fontenot placed defendant in handcuffs with the aid of Deputy Dwayne Andrus, who had arrived on the scene just seconds behind him and heard defendant repeat his statement that the victim "got what she deserved." The comment was also overheard by

Deputy Anthony Reed, the third and final officer to arrive on the scene. With defendant secured in the presence of Deputies Andrus and Reed, Deputy Fontenot drove down the road to the residence where the victim had placed the call to his office. The officer separated mother and son to spare the child of details of the incident and asked the victim what had happened. She explained that defendant had asked her for sex, that she had turned him down, and that after driving around for a while, he then assaulted her, pulling down her pants and choking and hitting her. However, in response to a direct question by Deputy Fontenot, the victim stated that she had not been raped by defendant.

Deputy Fontenot placed the victim and her son in his patrol unit and drove back to the scene. At that time, defendant told Fontenot that he had been driving the back roads looking for deer when his car broke down. Defendant explained that he stayed off the main roads because "he likes to drink" and would not get a D.W.I. for driving the back roads. Although the officers did not see any bruising on the victim's face and neck, Deputy Fontenot placed defendant under arrest for simple battery. According to Deputy Reed, after repeating her statement that defendant had grabbed her around the throat and "knocked her around a little bit" but had not sexually assaulted her, she turned to him and added, "It's not that he didn't try." Deputy Reed then drove the victim and her son back to defendant's home while Deputy Fontenot transported defendant to the station house for booking and Deputy Andrus remained on the scene with the car until a wrecker arrived.

Later that morning, the victim went to the Evangeline Sheriff's Department where she "broke down and cried" and stated that defendant had raped her. The police immediately sent her for a rape examination at the Ville Platte Medical Center. On that afternoon, the police also interviewed defendant, who gave a formal statement in which he admitted that had been drinking and explained that he remembered little of the evening. Two days later, defendant gave the police a DNA sample and at that time, when asked again what had happened, defendant stated that he loved the victim "like a daughter" but that if they "did have sex," it was because "she wanted to."

The results of the rape examination conducted at the Ville Platte Medical Center were largely negative. The examining physician, Dr. Steele, found no trauma to the victim's back, neck, chest, or abdomen and did not detect any vaginal lesions, lacerations, or bruises. Dr. Steele did find the victim's "mood and affect" consistent with that of someone who had endured a

sexual assault, but the results of vaginal swabs taken from her also proved negative.

The state thus could not provide physical evidence corroborating the victim's account of rape and its only other witness on the scene at the time, the victim's son Cody, had been asleep in the backseat of defendant's car for much of the night and recalled only that at one point he woke up when he heard his grandfather "hollering" at his mother. However, he did not see or hear anything else and fell asleep again until awakened by his mother before setting off on foot to find help.

Defendant did not testify at trial but his wife informed jurors that he was in such poor health that he dressed in jogging pants because he did not have the dexterity to button up a pair of pants, and that he drank "whatever he could get his hands on, and he'd make sure he had enough." As a result, defendant had erectile difficulties which had not been improved by a recent prescription for Viagra which Mrs. Ware filled for him every month. She never saw him take the drug and, in any event, it did not work as their sex life got "worser each time." Mrs. Ware testified that until the night of the incident, she and defendant had enjoyed a close relationship with the victim, even after she divorced their son. That relationship ended when she opened the door at Cody's knock and found the victim standing on the porch crying and her husband seated in the back of a police cruiser parked outside. According to Ms. Ware, when she asked the victim what had happened, "this is exactly what she said on the porch that he tried to but she said he did not succeed." Mrs. Ware admitted telling the victim that ". . . if it'd be anyone else that he had tried to rape . . . I could believe but I can't believe he tried to rape you."

*State v. Ware*, 959 So.2d 459, 460-463 (La. 2007).

In light of the above, viewing the evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was sufficient to sustain petitioner's attempted forcible rape conviction on federal *habeas* review. Considering the "great weight" afforded to the state court's determination and the above summarized evidence, the undersigned finds that "any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."

It is clear that petitioner could have been convicted of forcible rape based solely on the testimony of the victim. The victim testified that despite her resistance, petitioner pinned her down so that she could not move, pulled off her jeans and underwear and penetrated her. [rec. 586-589]. Under Louisiana law, the testimony of the victim alone may be sufficient to prove the elements of the offense, even if there was no physical evidence of the alleged conduct. *State v. Bourque*, 33 So.3d 1092, 1096 (La. App. 3rd Cir. 2010) *citing State v. Jaramillo*, 953 So.2d 146 (La. App. 3rd Cir. 2007), *writ denied*, 966 So.2d 600 (La. 2007).

The victim's testimony that she was the victim of petitioner's unwanted forcible sexual advances was corroborated by the testimony of the victim's son, who heard the conflict between petitioner and his mother, testifying that he heard petitioner "hollering" at his mother [rec. 541], as well as the testimony of dispatcher, Charlene Hudgens, who heard the assault taking place during the "open line" call. Hudgens testified that she heard the "struggle" [rec. 349], the victim telling petitioner to stop and the victim sobbing and crying. [rec. 349-350]. From what she overheard, Hudgens testified that she thought there was not only a physical assault taking place, but possibly a sexual assault. [rec. 352]. Moreover, both deputies who responded to the scene testified that petitioner stated that the victim "got what she deserved." [rec. 457, 474]. The jury apparently credited this testimony.

However, when viewed in light of the victim's prior inconsistent statements to the responding officers that petitioner had not raped her, although he tried [rec. 490-491, 459-460, 470], combined with that of petitioner's wife regarding petitioner's erectile dysfunction [rec. 709-710, 722-724] and the lack of physical evidence, the jurors apparently gave petitioner the benefit of the doubt on the issue of penetration. Thus, finding only an attempted forcible rape, rather than forcible rape.[3]

While petitioner urges this court to make credibility determinations and to weigh the evidence in his favor, on a sufficiency of the evidence review, it is not the province of this court to make credibility determinations or to review the weight of the evidence accepted by the jury. *See Young, Garcia, Greenwood*, *Green, Ramirez, Cyprian*, *Alexander* and *Jackson, supra*.

Although the jury could have rejected the victim's version of the incident, and accordingly, could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of the victim, as well as the testimony of the victim's son and dispatcher Hudgens. This testimony is sufficient to establish that petitioner had the requisite specific intent to commit forcible rape, but that, for whatever reason, was unsuccessful. This court cannot find the testimony accepted by the jury so incredible or insubstantial that, as a matter of law, it can be discounted.

---

[3] Attempted forcible rape is also a responsive verdict to the offense of aggravated rape. La. C. Cr. P. art 814(8).

16

In sum, any rational juror could have found sufficient evidence of the essential elements of attempted forcible rape. The evidence satisfies the *Jackson v. Virginia* standard. Although petitioner's guilt is based in part on circumstantial evidence and on the credibility of various witnesses, this alone is insufficient to supplant the jury's determination. The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green,* 160 F.3d at 1047 *citing Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Therefore, as the Louisiana Supreme Court found, this claim is without merit.

For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief. Accordingly;

**IT IS RECOMMENDED** that petitioner's sole remaining claim, that there was insufficient evidence to support petitioner's conviction, be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within**

**fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, June 1, 2011.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE